# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 18-10166-EFM

VALENTINE E. SOLIS,

    *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Suppress (Doc. 19). Defendant Valentine E. Solis asks the Court to exclude all evidence related to his August 4, 2018 arrest, arguing that the preceding traffic stop and subsequent search violated his Fourth Amendment rights. The Court concludes that the stop, arrest, and search were lawful; therefore, Solis's Fourth Amendment rights were not violated. For those and the following reasons, the Court denies the Motion.

### I.    Factual and Procedural Background

On August 4, 2018, undercover Officer Clayton Van Daley was observing a suspected drug house at 1710 W. Walker St. in south Wichita. At approximately 2:00 pm, Van Daley radioed Wichita Police Department Officers Vincent Reel and Jonathan Estrada for backup, stating that "a

Hispanic male wearing a tank top, walk[ed] out of 1710 West Walker with a black backpack" and entered a dark purple Dodge Charger parked on the street. The Charger pulled away from the home and Van Daley followed. In order to initiate a traffic stop without giving away the identity of his undercover police car, Van Daly requested that Estrada join him in following the Charger. After driving for a few minutes, the Charger changed lanes on McCormick Street without using a turn signal. In response to this traffic violation, Estrada turned on his lights and pulled over the Charger.

The Charger turned into the parking lot of the Lost Sock Laundromat on the corner of McCormick and Seneca. It stopped in a parking space in front of a wall. Estrada stopped behind it, preventing any means of escape. At this point, neither Estrada nor Reel was aware of any information concerning the driver of the Charger, other than Van Daly's previous radio message. Only later did they discover that Solis was the driver of the Charger.

Reel opened his car door to approach Solis and the Charger at the same time Solis opened the driver-side door of the Charger. Although it is not entirely clear from Reel's bodycam video, Solis began to exit the Charger before leaning back into the car and reaching for something. Upon exiting the police car, Reel was standing behind the right rear fender of the Charger and was able to see Solis's movements through the Charger's rear window. Believing that Solis posed a threat to their safety, Reel and Estrada drew their firearms and began shouting at Solis to exit the vehicle with his hands raised.

Reel moved around the back of the Charger, continuing to point his firearm at Solis, who was sitting in the driver's seat. After being told multiple times to exit the vehicle with his hands up, Solis stepped out of the Charger but remained at a suspicious angle to the Officers, trying to conceal something in his right hand. The Officers continued to command Solis to reveal and raise

both of his hands. Rather than obeying the Officers and clearly raising his hands, Solis began to turn around, continuing to conceal his right hand. He then knelt down and laid on the ground, at the Officers' command. During this process, Solis closed the car door, locked the car, and attempted to hide the Charger's keys under his chest. Then, while moving his hands behind his back, he threw a marijuana cigarette under the car. At this point, Solis was face-down on the ground with his hands behind his back and Reel cuffed him. Reel then retrieved the marijuana cigarette from under the car. Throughout the entire encounter, Estrada and Reel kept their guns drawn and pointed at Solis.

During the detention and handcuffing of Solis, Reel alleges to have smelled a strong odor of marijuana emanating from the Charger. He communicated to Estrada that this smell gave them probable cause to search the Charger. After escorting Solis to the police car and restraining him in the back seat, Reel and Estrada unlocked the Charger and proceeded to search it. They discovered a black backpack containing raw marijuana, methamphetamine, and a firearm.

Solis now moves to suppress all evidence stemming from this incident, arguing that the traffic stop, his arrest, and the subsequent search violated his Fourth Amendment rights. The Court held a hearing on Solis's motion on June 3, 2019.

## II. Legal Standard

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."[1] Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be

---

[1] U.S. CONST. amend. IV.

used in a criminal proceeding against the victim of the illegal search or seizure."[2] If a search or seizure violates the Fourth Amendment, the "fruit of the poisonous tree" doctrine prohibits the admission of any subsequently obtained evidence, including information, objects, or statements.[3] Searches must be authorized by a warrant unless an exception to the warrant requirement applies.[4] The government bears the burden to prove that a warrantless search or seizure was justified.[5]

The Fourth Amendment does not guarantee protection from all searches and seizures, but only those considered "unreasonable" under the law.[6] Warrantless searches and seizures are *per se* unreasonable, subject to the following six exceptions: (1) consent; (2) plain view; (3) *Terry* stop and frisk; (4) search incident to lawful arrest; (5) exigency; and (6) automobile.[7]

### III.   Analysis

Solis argues that the Court should exclude all evidence related to his August 4, 2018 arrest because: (1) the traffic stop was unlawful; (2) the arrest was unlawful; and (3) the warrantless search of the Charger was unlawful. At the hearing on June 3, 2019, the Government argued that the traffic stop was lawful because it was based on an observed traffic violation and that the arrest was lawful because of an officer safety exigency. The Government also presented three theories as to how the search of the Charger was lawful. The Court will address each of these arguments in turn.

---

[2] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

[3] *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).

[4] *California v. Carney*, 471 U.S. 386, 390 (1985).

[5] *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th Cir. 2001) (citations omitted).

[6] *See* U.S. CONST. amend. IV.

[7] 3A Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CRIM. § 675 (4th ed. 2019).

**A.     The Traffic Stop was Lawful because it was based on an Observed Traffic Violation.**

Estrada and Reel were not justified in pulling Solis over solely because Van Daly observed Solis previously exiting a suspected drug house. However, the Officers did observe a traffic violation while pursuing Solis. Regardless of whether or not the Officers intended to stop Solis to discover illegal substances, the law permits pretextual traffic stops and the Officers were justified in stopping Solis for the observed traffic violation.

Federal courts acknowledge three types of law enforcement encounters: voluntary encounters, investigative detentions, and arrests.[8] A traffic stop is treated as an investigative detention.[9] Investigative detentions are governed by the standards established in *Terry v. Ohio*.[10] In *Terry*, the Supreme Court held that an investigatory detention need only be supported by reasonable suspicion of criminal activity, rather than the higher standard of probable cause.[11] Reasonable suspicion for a *Terry* stop is subject to a two-part analysis. The stop is reasonable if it is (1) "justified at its inception," and (2) "reasonably related in scope to the circumstances which justified the interference in the first place."[12] A detention is justified at its inception if the "specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion that an offense is being committed."[13]

---

[8] *United States v. Brown*, 496 F.3d 1070, 1074 (10th Cir. 2007) (citations omitted).

[9] *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005) (citation omitted).

[10] 392 U.S. 1 (1968).

[11] *Id.* at 30.

[12] *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (citations and quotations omitted).

[13] *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir. 1990).

An observed traffic violation provides the articulable facts necessary to give rise to a reasonable suspicion that a person has committed a crime.[14] As such, the resulting traffic stop is justified at inception.[15] Here, Estrada and Reel both observed Solis make an illegal lane change while driving east on McCormick Street and they initiated a traffic stop based on that observed traffic violation. The Court therefore concludes that Estrada and Reel justifiably stopped Solis's car.

The Court also concludes that the traffic stop was related in scope to the circumstances that justified it in the first place. Estrada and Reel escorted the Charger into the laundromat parking lot, at which point they parked behind the Charger to block its exit. Reel then proceeded to exit the police car to effectuate the traffic stop. Those actions are reasonably related in scope to the circumstances which justified the interference in the first place. Once Reel began to exit the police car, Solis's actions created the exigency—as discussed in greater detail below— prompting the Officers to draw their firearms and detain Solis. This exigency stemmed from the regular scope of the initially-lawful traffic stop.

The Court concludes that the traffic stop did not violate Solis's Fourth Amendment Rights since it stemmed from an observed traffic violation and was related in scope to the circumstances that justified it in the first place.

---

[14] *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).

[15] *Id*.

**B.      The Arrest of Solis was Lawful because of an Officer Safety Exigency.**

The exceptions to the warrant requirement for "exigent circumstances that arise in the context of warrantless searches can also apply to warrantless arrests."[16]  Among those exceptions is the officer safety exigency.[17]  Under this doctrine, officers can detain a suspect if they have reasonable grounds to believe that there is an immediate need to protect their lives.[18]  The Government bears the burden of establishing that exigent circumstances necessitated the warrantless arrest.[19]

The Court concludes that an officer safety exigency permitted Reel to draw his gun and detain Solis.  While Reel was exiting the police car to effectuate the traffic stop, Solis opened the driver-side door of the Charger.  At the same time, Reel saw through the Charger's rear window Solis frantically reaching for something in the car.  Additionally, the Officers knew Solis had just left a suspected drug house.  Considering the totality of the circumstances, Reel had reasonable grounds to believe that there was an immediate need to protect his and Estrada's lives.  As such, it was reasonable for Reel to draw his gun to detain Solis.

However, the officer safety exigency ended once Solis was detained.  At that point, he no longer posed a serious threat to the Officers.  While he was being detained, Solis attempted to hide a marijuana cigarette and then threw it underneath the Charger.  After Reel recovered the marijuana cigarette and confirmed it was contraband, the Officers then had probable cause to arrest Solis.

---

[16] 1 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CRIM. § 58 (4th ed. 2019).

[17] 3A Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CRIM. § 678 (4th ed. 2019).

[18] *See id*.

[19] *United States v. Reeves*, 524 F.3d 1161, 1169 (10th Cir. 2008) (citing *United States v. Cuaron*, 700 F.2d 582, 586 (10th Cir. 1983)).

So, the officer safety exigency allowed the Officers to first detain Solis, during which other facts arose establishing probable cause to arrest him. The Court therefore concludes that the Officers' detention and arrest of Solis was lawful.

**C.    The Warrantless Search of the Vehicle was Lawful under the Automobile Exception.**

At the hearing on June 3, 2019, the Government presented three theories as to why the warrantless search of the Charger was lawful. First, the Government argues that there were exigencies which nullified the Officers' duty to obtain a warrant. Second, the Government argues that the warrantless search was lawful under the "search incident to arrest" exception to the warrant requirement. In its supplemental briefing, the Government bolstered this theory, arguing that the "automobile exception" applies in this case. Third, the Government argued that the evidence discovered in the Charger should not be excluded since it would have been "inevitably discovered." In its supplemental brief, the Government abandoned this third theory. The Court will now address the Government's remaining two arguments.

*1.    Exigencies*

At the hearing on June 3, 2019, the Government argued that multiple exigencies existed at the time of the warrantless search of the Charger. The Government argued that third parties from the nearby drug house could come to the parking lot to retrieve the Charger, removing it from police custody. Furthermore, the Government asserted that since the Charger remained inherently mobile, someone could have driven it out of police custody. The Government lastly argued that there was a continuing threat to officer safety.

The Court dismissed these arguments at the hearing and does so now again. The Charger was in police custody at the time of Solis's arrest. An officer could have continued to guard the

car and prevent anyone from tampering with it. Furthermore, the Charger was parked between a building and Estrada's police car, so it is unreasonable to believe that someone could have easily accessed it and escaped. Lastly, as noted above, the officer safety exigency ended once the Officers handcuffed Solis, thereby extinguishing any threat he had posed to them. There was also no reason to believe that something inside the Charger posed a threat to the Officers' safety. For these reasons, the Court concludes that there was no exigency justifying the Officers' warrantless search.

 2. *Automobile Exception*

In its supplemental brief, the Government argues that the warrantless search was lawful under the "automobile exception." Courts do not need to find that exigent circumstances existed in order to apply the automobile exception.[20] The automobile exception stems from the notion that "one has a lesser expectation of privacy in a motor vehicle because its function is transportation, and it seldom serves as one's residence or as the repository of personal effects."[21] If there is probable cause to believe that a vehicle contains contraband, the law does not require officers to obtain a warrant before searching it.[22] "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence."[23] Furthermore, under the automobile exception, "police officers may stop and search

---

[20] *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (stating "the 'automobile exception' has no separate exigency requirement.").

[21] *New York v. Class*, 475 U.S. 106, 112–13 (1986) (quoting *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974)).

[22] *United States v. Johns*, 469 U.S. 478, 484 (1985); *Florida v. Meyers*, 466 U.S. 380, 382 (1984); *Michigan v. Thomas*, 458 U.S. 259, 261 (1982); *United States v. Swingler*, 758 F.2d 477, 489–90 (10th Cir. 1985).

[23] *United States v. Vasquez–Castillo*, 258 F.3d 1207, 1212 (10th Cir.2001) (quoting *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir.1998)).

a car if they have probable cause to believe it contains contraband, regardless of whether a traffic violation has occurred or a search warrant has been obtained."[24]

The Government alleges that Reel identified a "strong scent" of marijuana emanating from the Charger, establishing probable cause to search it. The Court does not credit those allegations. When Reel first exited the police car, he was too far behind the Charger to immediately smell the marijuana. As Reel approached Solis, there was a strong wind blowing away from him and the Charger. In the Axon video, Estrada seems to indicate that he did not personally smell the marijuana and he had to confirm that Reel in fact smelled it. Additionally, the Officers ultimately discovered only a small amount of raw marijuana and its packaging inside the car. Under these circumstances, it is hard to believe that Reel detected a sufficiently strong scent of marijuana emanating from the car to justify a warrantless search.

However, the Court concludes that the totality of the circumstances established probable cause to search the Charger for contraband pursuant to the automobile exception. Solis's suspicious behavior and furtive movements while being detained, his attempt to hide a marijuana cigarette by throwing it under the car, and the Officers' knowledge of Solis's connection to the suspected drug house, taken together, established probable cause to believe that the Charger contained contraband. Under the current state of the law, it is irrelevant that the Officers *could* have patiently obtained a search warrant.[25] Once they had probable cause to believe the car contained contraband, they were justified in searching it. As such, the Court concludes that the

---

[24] *United States v. Benard*, 680 F.3d 1206, 1210 (10th Cir. 2012). Furthermore, whether the vehicle is locked or unlocked is insignificant to the determination of probable cause. *See, e.g., United States v. Crabb*, 952 F.2d 1245; *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009).

[25] *United States v. Crabb*, 952 F.2d 1245, 1246 (10th Cir. 1991).

warrantless search of the Charger was lawful under the automobile exception to the warrant requirement.

## IV. Conclusion

The initial traffic stop of the Charger was lawful because it was based on an observed traffic violation. Solis's arrest was also lawful because an officer safety exigency allowed the Officers to detain Solis, during which they developed probable cause to arrest him. Finally, the search of the Charger was lawful because the Officers had probable cause to believe that it contained contraband. Solis has therefore unsuccessfully alleged a violation of his Fourth Amendment rights.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Doc. 19) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 14th day of June, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE